## George S. MacKenzie, Appellee, v. Fred T. Barrett, Administrator, Appellant.

### Gen. No. 14,485.

1. DEBTOR AND CREDITOR—*effect of check as evidence of debt.* A check on a bank is not evidence of the fact of indebtedness of the payee to the drawer of the check, but, on the contrary, it is evidence of the indebtedness of the drawer to the payee.

2. DEBTOR AND CREDITOR—*what essential to establishment of relation.* The relation of debtor and creditor cannot be established without the consent of the debtor.

3. EVIDENCE—*effect of entries upon stubs of check book.* Held, in an action against the estate of a deceased party that entries contained upon stubs of a check book are not evidences of indebtedness.

4. EVIDENCE—*what not part of res gestae.* Held, that entries contained upon the stubs of a check book were no part of the *res gestae* in an action against the estate of a party deceased to recover an alleged indebtedness claimed to have been shown by such entries.

5. EVIDENCE—*when admission by administrator incompetent.* Held, that a letter urged as containing an admission by the administrator of an estate sought to be charged with a debt was not competent as evidence tending to show the existence of such debt.

Contested claim in court of probate. Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the March term, 1908. Reversed and judgment here. Opinion filed May 20, 1909. Rehearing denied June 14, 1909.

**Statement by the Court.** The appellee filed a claim in the Probate Court of Cook county against the estate of Anna A. Barrett, deceased, of which estate appellant is administrator. The Probate Court disallowed the claim and appellee appealed to the Circuit Court, where the cause was tried by the court, without a jury, with the result that the court found for appellee and rendered judgment on finding for the sum of $583.36. Appellee's claim, filed by him in the Probate Court, is for cash loaned September 4, 1905, $300; cash loaned November 4, 1905, $100; cash loaned February 21, 1906, $183.36.

The appellant's intestate, Miss Anna A. Barrett, was in appellee's employ, and quit his employ in the latter part of January, 1906, on account of sickness, as we infer from the evidence. She died July 13, 1906. Appellee put in evidence, in support of his claim, the following documents:

"CHICAGO, September 4, 1905.

No. 1603.

The Northern Trust Company, Southeast corner La-Salle & Adams street:

Pay to the order of A. A. Barrett $300.00.

G. S. McKENZIE.

Pay First National Bank or order.

ANNA A. BARRETT."

Entry on stub of check: "Order of A. A. Barrett for loan $300."

"CHICAGO, February 21, 1906.

No. 1707.

Northern Trust Company.

Pay to the order of Aetna Life Insurance Company $183.36, one hundred eighty-three 36/100 dollars.

G. S. MACKENZIE.

Aetna Life Insurance Co. Pay to the order of 1st National Bank, Chicago.

THOMAS R. LYNAS, Mgr."

Stub of check: "No. 1707. February 21, 1906. To the order of Aetna Life for A. A. Barrett, $183.36."

"Aetna Life Insurance Company.

HARTFORD, CONN., February 20, 1906.

The receipt of the premium due on above date, under policy No. 283,383 on the life of Miss A. A. Barrett is hereby acknowledged. * * * Paid this 20th day of Feb'y, 1906.

THOS. R. LYNAS, Mgr.

Agent at Chicago, Ill."

"No. 1630.    CHICAGO, Nov. 6, 190—
Pay to the order of A. A. Barrett $100.00, one hundred 00/100.
G. S. MACKENZIE.
Pay to the order of the First National Bank of Chicago.    ANNA A. BARRETT."

Stamped: "Paid through Chicago Clearing House November 6, 1905."

Stub of check: "No. 1630. November 4, 190— to the order of A. A. Barrett for loan, $100."

It was proved, without objection, that next after 190— in the stub and check should be the figure 5.

The signatures to the checks and corresponding stubs were proved to be genuine, and the evidence for appellee, the claimant, tends to prove that his uniform custom was to write checks and notations on the stubs of the checks contemporaneously. There is no evidence to the contrary of this. Margaret E. Brennan testified that, during the time of the transactions in question, she kept appellee's books, and produced a book in which were the entries of payments and expenses, and that there were no entries in the book of the sums of $300, $100 and $183.36 shown in the checks. The book was admitted in evidence over appellant's objection.

Miss Brennan testified that she visited Miss Barrett in the hospital Easter Sunday, 1906, and in conversation with Miss Barrett, she, Miss Brennan, referred to the fact that Mr. Mackenzie had been exceedingly kind to her, and Miss Barrett said that he had been not only exceedingly kind, that he had paid her salary constantly, and had advanced her considerable in addition to it.

No evidence was offered by appellant.

WHITFIELD & WHITFIELD, for appellant.

WILLARD & EVANS and REX MACKENZIE, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Counsel for appellant contend that there was no competent evidence in support of appellee's claim, objecting specifically to the checks and stubs as evidence of loans by the appellee to Miss Barrett, the appellant's intestate.

A check on a bank is not evidence of indebtedness of the payee to the drawer of the check. On the contrary, it is evidence of the indebtedness of the drawer to the payee. Chestnut v. Chestnut, 15 Ill. App. 390, 392. If such a check is not paid when presented for payment, for want of funds of the drawer, and if the payee, in a suit by him against the drawer, proves these facts, a *prima facie* case is made for a recovery. The checks, therefore, standing alone, are no evidence of loans by appellee to the deceased. Are the notations on the stubs of the checks, assuming them to have been made at the same times as the checks, and taking them in connection with the checks, evidence of loans by appellee to the deceased? It would seem that the stubs are no stronger evidence than entries in appellee's books of loans to the deceased of the several sums for which the checks were given, made at the same times at which the checks were given. Such entries of charges for money loaned would not be evidence. Boyer v. Sweet, 3 Scam. 119; Ruggles v Gatton, 50 Ill. 412; Schwarze v. Roessler, 40 Ill. App. 475; Smith v. Rentz, 131 N. Y. 169, 176.

In Boyer v. Sweet the court, after stating the rule as to the admission of books of account as evidence, say: "This rule would not apply to an account for money lent, as that is not usually the subject matter of an account, notes being generally taken, nor to an account certain—a single charge only, as that would show no re;· ·ar dealings between the parties."

In Ruggles v. Gatton, *supra,* the court, p. 416, refer to the above quoted language approvingly.

In Smith v. Rentz, 131 N. Y. p. 176, the court say:

"Moreover, entries of cash transactions may be fabricated with much greater safety and with less chance of the fraud being discovered than entries of goods sold or delivered, or of services rendered. It would be unwise to extend the operation of the rule admitting a party's books in evidence, beyond its present limits, as would be the case, we think, if books containing cash dealings were held to be competent."

The words on the stubs of the checks for $300 and $100 are ambiguous. They·are, "Order of A. A. Barrett for loan." These words may import a loan from Miss Barrett to the appellee as well as a loan from him to her.

In the present case a book of appellee's which Miss Brennan testified contained the entries of cash payments made in the regular course of business, was put in evidence. For what purpose it was admitted, we do not know, as it was stipulated in open court, on the trial, that it contained no entries of any sums evidenced by the checks. As appellant defended as administrator, appellee was excluded from testifying by section 2 of the statute in respect to evidence; but if, as he claims, the checks were for loans to the deceased, he had ample time in which to secure acknowledgment of this from the deceased, as by notes, or other written evidence, Miss Barrett left his employ in the latter part of January, 1906, from sickness, as we infer from the evidence, and went to a hospital, and did not die till July 13, 1906, and the checks are dated, respectively, September 4, 1905, November 4, 1905, and February 21, 1906. The appellee's counsel contend that the stubs are admissible as *res gestae.* They are no more *res gestae* than would be entries in appellee's books made at the very time the checks were written. But, in view of the law in respect to books of account as evidence, such entries would be inadmissible. It is desirable that the law shall be consistent.

The evidence is, we think, sufficient to prove that check No. 1707 to the order of the Aetna Life Insur-

ance Company, was received by that company in payment of the premium on a policy on the life of Miss A. A. Barrett. The policy was not produced, nor is there any evidence of its contents or for whose benefit it was, or by whom it was held. There is no evidence of any request of the deceased to appellee to pay the premium, or of any obligation resting on him to pay it. It was, so far as appears from the evidence, a voluntary payment by appellee. We do not understand that one can make another his debtor without the latter's request or consent. If it be said that the payment was for Miss Barrett's benefit, the answer is that this is not shown by the evidence.

It was objected to the receipt as evidence, that there was no evidence that Miss Barrett had authorized appellee to make the payment. Appellee relies on the testimony of Miss Brennan, that the deceased said to her that appellee had been exceedingly kind to her, that he had not only paid her salary constantly, but had advanced her considerable in addition to it. Neither time nor circumstance nor amount was stated. The statement may have been strictly true, and yet have had no reference to any item of the claim in question.

The appellee has assigned, as cross-error, the ruling of the court against the admission in evidence of the following letter offered in evidence by appellee:

"SOUTH HAVEN, MICHIGAN, August 7.

DEAR MR. MACKENZIE: You must think I have deserted you, but I have been over here answering all the letters to Anna's friends, as it is a nice, quiet place. I am coming home tomorrow, as I go into the hospital in about a week.

Our lawyer won't allow me to settle any of Anna's accounts except those that have been made since her death, such as the undertaker and so forth. He says the court has to know about them or I may get into trouble. I wish we could settle it all now, as it is a shame to keep you waiting for your money. There are other bills coming that I can not settle, such as Mar-

shall Field's, and also a dressmaker's bill that she re-fused to pay.

I am going into the hospital in a short time, but I will drop in and see you as soon as I return.

Hoping you are well and happy, I am,

Your sincere friend,

FRED T. BARRETT.''

The letter was written subsequently to the appoint-ment of appellant as administrator and prior to the filing of appellee's claim against the estate. It is urged that the letter is an admission by the appellant, as administrator, and is competent evidence, and cases in other jurisdictions are cited to the effect that the admissions of administrators, in their respective ca-pacity, are admissible in suits against them. The let-ter was written prior to the filing of appellee's claim and does not indicate that appellant knew just what the claim was, but only that appellee claimed that the estate owed him something, and there is a refusal to settle anything with appellee before the court's action in the premises.

We do not think the court erred in ruling against the admission of the letter in evidence. We are im-pressed with the view, that if all the facts could have been proven in regard to the items of the claim, which was perhaps impossible owing to the exclusion of ap-pellant's testimony by the statute, the justice of the claim might have been shown. But we are limited to passing on the competency and sufficiency of the evidence in the record, and cannot escape the conclu-sion that the claim has not been proven, and that the court erred in its finding.

The judgment will be reversed and judgment will be entered here that appellee's claim be disallowed and dismissed.

*Reversed, and judgment here.*