OHIO CREDIT CORP., ASSIGNEE, *v.* BRIGHAM.

[Cite as Ohio Credit Corp. v. Brigham (1970),
25 Ohio Misc. 241.]

(No. D-91333—Decided November 18, 1970.)

Dayton Municipal Court.

*Mr. Richard L. Cousineau,* for plaintiff.
*Mr. Winfield E. Kinney,* for defendant.

RICE, J. This cause came on to be heard, upon the merits, by the court, without the intervention of a jury, upon the pleadings and the testimony of both parties. The controversy involves a bill of $388.75 allegedly due and owing the plaintiff, the assignee of an employment agency, from the defendant for whom said employment agency allegedly found a job, which he (the defendant) accepted.

1. *The Facts*

The evidence tended to show that the defendant entered into a written agreement with the plaintiff's assignor, the Helen Russell Personnel Agency, whereby he agreed to pay a service charge based upon the annual gross income of the position secured for him by the plaintiff and accepted by him.

The written contract signed by the defendant obligated the defendant to pay a certain service charge (7% of

gross income or $388.75) only if he "accepted" a position with an employer to whom he had been referred by the employment agency. Acceptance is defined by the agreement as "an agreement with the employer to commence working on a given date."

The plaintiff's evidence tended to show (and this was corroborated by the defendant) that the personnel agency, after giving the defendant a series of aptitude tests, sent the defendant on several interviews one of which was to see a Mr. Maul, the personnel director of the Dayton Tire & Rubber Company, on May 7, 1969. The defendant says that he and Mr. Maul discussed the job but that he never accepted same, rather he accepted a job with the Dayton Steel Foundry that very afternoon.

According to the plaintiff, and here the evidence contradicts that of the defendant, the defendant accepted the job with the Dayton Tire & Rubber Company for $2.67 an hour, beginning on either May 10 or May 12, 1969. This "acceptance" was verified by a telephone call between Mr. Maul of the Dayton Tire & Rubber Company and a Mrs. Lucas, a consultant employed by the Helen Russell Personnel Agency. In addition, the defendant allegedly contacted the plaintiff, again speaking to Mrs. Lucas, and indicated that he had accepted the job and was pleased with the terms and conditions of same. All of this information was found on "business records," which were sought to be introduced into evidence, which contained the handwriting of Mrs. Lucas, the consultant of the personnel agency, indicating the defendant's acceptance of the job, the terms of same and his starting date.

The other items of evidence introduced were a "referral production" sheet which indicated the defendant's being sent to the Dayton Tire & Rubber Company but which failed to list any disposition in terms of accepting or rejecting the job, and a "cognovit note" form for $388.75 which was never signed by the defendant. On said note, it is indicated that the defendant was to start work on May 12, 1969; yet, it is noted that on May 9, 1969—some three days before the starting date—the defendant was mailed

an invoice from the plaintiff offering to settle the claim for $100.

2. *The issue*

Since any liability of the defendant to the plaintiff rests on whether or not the defendant "accepted" the employment with the Dayton Tire & Rubber Company, the court must determine whether or not such acceptance was ever consummated within the meaning of the contract in question.

3. *The Decision*

The court holds, in finding for the defendant, that the plaintiff has failed to prove by the requisite preponderance of the evidence that the defendant "accepted" a job within the meaning of the contract; an acceptance which would have, pursuant to the contract, rendered him liable to the plaintiff's assignor, the Helen Russell Personnel Agency.

The only evidence that the defendant actually accepted the job at the Dayton Tire & Rubber Company (one will recall that the defendant himself denies this) is hearsay evidence contained in "Business Records." The other business records sought to be introduced do not contain any mention of the defendant's acceptance of the job.

R. C. 2317.40, the Business Records Section, an exception to the hearsay rule, must not be construed in a manner that would make the reports and records admissible when oral testimony of the same facts would be inadmissible. *Schmidt* v. *Doehler Die Casting Co.*, 143 Ohio St. 421; *Estes* v. *Goodyear Tire & Rubber Co.* (C. P.), 60 Ohio Law Abs. 266. In other words, matters entered in the record must not be based on hearsay. The statute does not generally render competent otherwise incompetent evidence. *Better Homes Equipment Co.* v. *Nixon* (App.), 72 Ohio Law Abs. 329. The statute does not make competent in evidence records that may be described as self-serving declarations. *Schmitt* v. *Doehler Die Casting, Inc., supra*; *Tenbusch* v. *L. K. N. Realty Co.*, 107 Ohio App. 133. It appears that the business records in question, as to the defendant's acceptance of the job, were made by a Miss

Lucas, the consultant, and not the witness, Nina Wyatt. In the court's opinion, this source of information, method and time of preparation are not such as to justify their admission as an exception to the hearsay rule. In the case at bar, it is clear that the business records relied upon contain written evidence from a Mrs. Lucas, which, if orally proffered by the witness Nina Wyatt, would be objectionable as hearsay, being statements allegedly made by the defendant and a Mr. Maul to a Mrs. Lucas, an employee of the plaintiff who did not appear in court. In addition, the written evidence purporting to contain an acceptance of a job, thus binding the defendant to pay a fee to the plaintiff, may be and is considered by the court a self-serving declaration inadmissible under the law.

The business records are sought to be admitted to show the truth of the matters contained therein (acceptance of the job offer). This is hearsay evidence and inadmissible.

Having decided this case on the fact that there does not exist sufficient admissible evidence indicating an acceptance of a job by the defendant that would bind him to the terms of the contract in question, and thus obligate him to pay the full service charge to the plaintiff, the court will only ponder, somewhat whimsically as to why the plaintiff, claiming the defendant accepted the job on the one hand would, some three days prior to the date on which he was due to begin work, send an invoice to the defendant offering to settle or compromise the claim for 25% of the amount claimed due and owing. This factor might indicate lack of a binding acceptance of the job and therefore a binding obligation of the defendant to the plaintiff.

Wherefore, the court enters final judgment in favor of the defendant.

*Judgment for defendant.*